1-4-5-1, Jason Began v. Laura Drouin Good morning, Your Honor. May it please the Court, Edward Benjamin, along with my co-counsel, Kasia Park, for the appellant, Laura Drouin. We are here on an interlocutory appeal on a denial of qualified immunity in a deadly force case. I suppose the first thing I should say is we believe we are entitled to an interlocutory appeal at this point because there are really no material facts that are in dispute in this case. We have an audio recording and I would hope that the members of the Court have a recording that was made of this event because from the moment this man unexpectedly snapped a large knife out in a room full of people until the officer acted was four seconds. You said room full of people. Where were the people other than the fellow who got shot and the officer who shot him standing in the room at the time of the fire? The man was in a room. He was originally sitting in a chair. There was a man sitting next to him and there were two men in front of him who were talking. One man who was in between the officer and Began had stepped back. The other two men were still in close proximity to him. I couldn't find any in the record that places the other two men. In fact, as I understood it, the officer testified that no one was between her and the individual she shot and at another point she refers to them as beside her. Not the men who were speaking to him. They weren't beside her, Your Honor. At the outset of this, she is standing outside in a hallway. They've motioned for her to stay out of sight while these men are in the room. There's an entranceway and there are people in the entranceway, members of the treatment team, but there are three members of the team who are actually in the room in close proximity to him. And then when she's motioned forward, she steps into the hallway. That's when people are beside her because they're in the entranceway. It's those people who are beside her. The three men are still in close proximity to Began, but one steps back, so he's not in the way, clearly when she fired. When you say they're in close proximity, your brief doesn't cite anything. I found no diagram in the record of where the people were standing that was undisputed. I found, where exactly would you point us to in the record? Because this seems to be a crucial point for you, is that they were close enough that he could lunge at them. That he could reach them. They were much closer than she was. And you need the record to be unambiguous on that point. Your Honor, I know that in the record we had the participants say where they were and what they were doing, and then when he jumped up with the knife, one person said he stepped back. No one else, I don't think, changed position. Mr. Kimball, the man speaking to him, said that when he pulled the knife up and slashed his arm and turned around, that the knife was pointed at his direction. So he was, I mean, they were still in the room with him. What I can say is the stipulated facts are that all the men were still in close proximity to Beagin in the room. You're saying there's a stipulation that says... I believe that's a stipulated fact that the court adopted. And what does close proximity mean? Well, it was feet. I can't tell you that it's described any better than that in the record. It's that they were in a small room. Is that something that has to be heard by a jury? Pardon me? All this, is it something that has to be heard by a jury? Well, Your Honor, I don't think so. I think that this case is analogous to the Roy V. Lewiston case, where this court said that because we're surrounding the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in closed cases, that in closed cases, a jury doesn't automatically get to second-guess these officers' life-and-death decisions. And in Roy, there were facts. There were factual disputes because eyewitnesses said that the man didn't pose a threat. He was so intoxicated he was just flailing ineffectually, they described it. They have three police officers with guns drawn around this man. And they had an expert who said there was room for the police to retreat. Suppose, returning to this case here, suppose that the record is such that the jury could find that the other three individuals, other than the officer and the victim, or either beside or behind the officer. If that was the factual finding, then couldn't we then find that it was clearly improper to shoot without any warning? I suppose if that were the facts, that there would be a much closer case, Your Honor. And I think the statement, I believe, in my opponent's brief that says that the – cites to the record where it steps into the hallway, and there are already people there. You've pointed us to nothing in your brief that says that. You're just asserting it here. Assume they were beside or behind her. You say it's a closer case. Isn't it a further case away than McKinney? Wouldn't the facts then be worse for you than the facts were for the officer and McKinney if everyone was in fact beside or behind her? Well, in McKinney, the guy with the gun was 70 feet away. The court noted he was nonchalantly walking. He was ambulance slowly. There was clear visibility. The officer had a rifle behind a car. So it's a vastly different situation, I think. Would you rather be 20 feet away from someone with a knife standing next to an officer fully armed or 60 feet away from a guy with a gun? Well, but it's a guy with a gun who's being faced with an officer with a rifle behind a car. Right. Who fires first? Whereas with the knife, you've got some time. You do have some time, but in the timing issue, Your Honor, this is not a case of a hot call like McKinney was. The officer didn't go there knowing she was going to be confronting an armed suspect. She was told she was to transport someone who was being recommitted to a psychiatric ward. And when she got there, the only information she was given was he had a history of violence. She knows she's told to stay out of the way. There are people in talking. She can hear the conversation that's going on, and you'll hear it on the audio if you listen to it. And when he's told he's being recommitted, he says, I'm not going back. And when he's told he doesn't have a choice because the police are going to take him back and she's motioned forward, his response is to stand up and pull out a knife that he's had hidden in his clothes and to snap that blade open and slash himself. The people who were in close proximity with him, all of them, I deposed them. They all testified that his actions were entirely unpredictable, and they didn't know what was coming next. Kimball, who was the guy closest to him who had been giving him the warning or had been telling him he was being recommitted, Kimball specifically said, I believe that if anybody tried to intervene with him, that he would use the knife against them. Can I ask you this, on the district court's opinion on this point, as I understand it says, the issue in this case is whether at the time of the incident the law was clearly established such that defendant Druin would have understood that she was violating plaintiff's You're not contesting that? She didn't give a warning? Right. Yes, Your Honor. Okay, you're accepting that for the purpose of the interlocutory appeal. The issue for us would be that the warning is feasible and in four seconds, faced with what she was, it wasn't feasible. Which makes sense if they were in, I mean, you've got a good case if they were in close proximity. So yes, the way the district court finishes it is it says the issue is, without any warning or directive, and you're not contesting that point, as plaintiff was inflicting harm to himself with a knife, and everybody agrees that's true, and then this is all it says about proximity, with other people in the same room. So that's what I have from the district court, we just know there are other people in the same room. District court doesn't seem to have decided at making any, I can't tell what the district court thought about the proximity of these people. I'm sorry I can't point you to it right now, but it is in the record that they were in close proximity to him at the time. Well, that would be consistent with being in the same room. But well, it's a small room, and they're talking to him, and one guy is sitting right next to him. What that leads me to think is, is your position that no matter where they were in the room you went, or is your position that they have to be in a particular spot in the room for you to win? I think the officer's actions would still be reasonable in perceiving that they were a threat if they were in the small room with a narrow way to get out of that room that was filled with people. The district court's, you're just challenging the district court's conclusion, because of the nature of the room, wherever they are in the room, you win, is that the idea? Well, again, you're... Because if not, then I think there starts to be a jurisdictional problem with you bringing interlocutory appeal. That's what I'm having trouble, do you see the point? I believe that the record says that they were in close proximity to them, whether that was in a stipulated part of the record or a finding. It could say that, and that would be true of a person in the room. You're in close proximity to me. The room's, there's photographs in the room, it's much smaller than this. In other words, we don't know what that means, that's what Judge Scott is pushing you on, so if I look at the district court, the district court thought they were in the room, everyone agrees they're in the room, and I'm just asking you, if they're in the room, but we don't know where in the room they are, can you win? I would say under the facts of this case, they're in a small room, they have to be close. There's about 20 feet between you and this bench, the record says she was 15 to 20 feet. Right, she was in that hallway entranceway into the room. To Judge Barron's point, they were, on this record, we have to rule the facts against you, it might have been way different for the officer in reality, she might have made exactly the right call that saved people's lives, so we're not doubting that you understand the procedural, but in the procedural setting we have now, he's about as far as you are from this bench from her, if we place them next to and behind her, you've got one case, if we place them next to her, you've got another case, and as Judge Barron's pointing out, the record, as findings by the judge, doesn't clarify that, and you want us to say the judge should have found more on summary judgment. I think that that is a fact that's in the summary judgment record, and if we're getting a de novo review of the summary judgment record, it's still a fact for this case, even if the district court didn't mention that case. The fact that you keep telling us is close proximity. Right, and that is in the record, that the men were close proximity. That's consistent with being in the room. I don't have any way of knowing, I mean, that it's not, if you want to say they're within four feet, or they were within the knife range of a lunge, that's a different statement than they're in the room. In the statement, they're in close proximity, it just doesn't tell me which of those two things we're talking about. I believe the record says that Kimball was where Beagin could reach him in a few steps. I believe that is part of the factual record. Did someone depose these three individuals? Yes, Your Honor. Did someone take out a piece of paper and ask them to put a dot on the paper where you were in the room? It's been a while now, I can't remember. I believe that people did, but general things, I mean, this was an event that, you know, just to get these people to describe what happened, I mean, everybody was fairly traumatized by it. I don't think we got a specific, I was two feet, I was three feet, it was, I was within a step or two of them, that kind of testimony, and I believe that is in the record. Which one of them said, because this isn't in your brief either, that someone said they were within a step or two? Mr. Kimball said that. The person who was speaking to him originally said that he was within, that he could be reached within a step or two. Good morning. May it please the Court. I'm Brad Pattershaw. I represent the appellee, Jason Beagin, in this case. I'd first like to address the close proximity argument. At the appendix, page 26, Phil Hunt, who was the one that brought Mr. Beagin to the outpatient offices that day, it stipulated that he was the person closest to Mr. Beagin when he extracted the knife from his pocket and began slashing his arms. The next paragraph that's stipulated is, Mr. Hunt did not make any movements towards Mr. Beagin because he saw Officer Drewin approaching and he backed out of the way. So Mr. Hunt is the closest person in proximity to Mr. Beagin and he got out of the way. And I do believe when I deposed Officer Drewin that she said that everybody else was to her sides at the time that she shot him. As outlined in our brief, I do think there's a jurisdictional problem here because the essence of the District Court's holding was that whether or not Mr. Beagin posed an immediate threat is a question of fact for the jury. And the facts here, when they're viewed in the light most favorable to Mr. Beagin, they include things such as, we have to look at the context here and Mangino is clear on that, the context is everything. Mr. Beagin was being recommitted to a psychiatric hospital that he spent almost ten years of his life at and he had no choice. He had sat in that room for four hours, he said, I didn't do anything wrong, I'm not going back there. Officer Drewin's counsel would like to infer from that that he was going to take somebody out or be violent with other people. But in the light most favorable, the logic here suggests that he might be suicidal. He's not going back to a hospital where he spent ten years of his life. Suppose Kimball was three feet away, one step away, and he pulls out this knife. Are you saying under those facts that it's clearly established the officer couldn't shoot and had to wait to see if he would plunge the knife into Kimball? Yes, I think it is still clearly established. What case would you point us to that would say that in that situation it was clearly established the officer could not shoot? Because, I can't name a case for you, Your Honor, but the fact that somebody is in a room with a knife, I mean when you go to a deli there's a person making a sandwich with a knife really close to you. They've got to do something more before the officer can shoot them. There's got to be something that is completely absent in this case. There's more than your deli hypothetical here. I understand, but there's... So why isn't that enough? That's the point, right? This isn't just a person with a knife. This is a person who has cut himself and who is mentally unstable. Does this record show after he cut himself in what direction the knife was pointed? Can you say that again, Your Honor? After he cut himself? After he cut himself, does the record show in which direction he was pointing the knife? What was he doing? He had it in his hand. I think he cut himself first using his right hand onto his left bicep, and if I'm not mistaken I think he then grabbed it in his left hand and attempted to cut his right arm as well and had it in his hand at the time that he was shot. So I don't know that the record discloses that it was pointed in any particular direction. Well, the way you say it now, it hasn't pointed toward himself. He clearly inflicted self-harm. That's shown in the record? That he inflicted self-harm? No, that he had his hand pointed as you just indicated? I don't know if that's pointed out in the record, but you will not find in the record that he pointed the knife at somebody else. There was testimony from Dr. Kimball, I think he's a PAC, Dr. Kimball that at one point Mr. Beaton raised the knife when he was about to cut his own arm and the direction of that knife was pointed towards Mr. Kimball, but then Mr. Kimball testified and the district court analyzed this that a jury could rationally conclude that there was no intent whatsoever to go after anybody else because it was coming down on his own arm. Do you agree with Mr. Benjamin's description of Kimball's testimony as to his location at the time of the shooting? I agree that it's been a while since the depositions took place and I don't know that we ever got down to feet and inches. I do remember Officer Drew and I believe testified she was between 15 and 20 feet away and said that the others were to her side. So from those facts, we argue that there was nobody any closer than 20 feet. And so my point about the deli, and it's probably a bad analogy, but there's got to be something more. There's got to be that step towards somebody. There's got to be that I'm going to do this to you. Some form of a verbal threat. Something more that didn't happen here. We have a gentleman that cut his arm. He never said a word to anybody. He never moved towards anybody. He was never warned to drop the weapon. Never given the consequences of what would happen. Officer Drew was 20 feet away. We're in the context of a psychiatric outpatient clinic and he's going back to a psychiatric hospital. But the thing is he's just used the knife on himself. That's the extra thing. It's not like a person just with a knife. He's not used a knife and he's used it on himself. So then there's a question of how reasonable is it to make a guess that he might use it on someone else. As I understand the findings the district court made, all we have from the district court is a legal ruling on the understanding that everybody's in the room without any ruling as to where they're placed. And if I'm understanding you, you're saying that there is sufficient, there's no stipulation or agreement as to the exact location of other people and how close they are. I think that's a fair statement, Your Honor. There is no stipulation as to, if you took the tape measure out, who was exactly where. I do think Mr. Benjamin's accurate when he says... So is that why you then say that insofar as he's making an argument that depends on where they're placed in the room, there's a jurisdictional bar to him making that argument? Insofar as he's just arguing a point about as long as they're in the room, he wins. I think you can see that there's no jurisdictional problem with that because that's the district court's ruling. He's not making any factual challenge, but you say you win on that. Right. Yes. And I think the district court is looking at that fact, where were the people in the room, coupled with all the other things about the no warning and the no step towards anybody else, the context of where he was, in saying that whether this guy was an immediate threat to others, the others being the key, he's clearly a threat to himself, and I believe Officer Druin testified that she believed he was suicidal at the time that she shot him, which is, I think it's very telling. So the point is, in the Augusta Police Department's standard operating procedure, under the Jarrett case, it's clear you've got to have an immediate threat to somebody else before you can use deadly force, and this is not a case where there was any other force. This was a hey, hey, hey, three shots with a Glock that hit my client. There was nothing else there. And for that reason, the district court said whether there is an immediate threat based on all of these facts to others, that's a question of fact for the jury. And insofar as he found that to be a question of fact, that would deprive this court of jurisdiction. In the alternative, as we argued in the brief, if the court does wish to conduct a de novo review, we think the district court got it right here based on all of these facts. And we can't lose sight of the context that this took place in. And even giving deference to Officer Druin, there was, Stena Ware says that you can look to actions that happened before the shooting. There was readily ascertainable information that Jason was suicidal, that he had been in Riverview Psychiatric Center before. This was not an emergency call. She could have stopped, punched a couple buttons on a computer and learned that fact. Would that have made a difference? It probably would have factored into something when that knife came out. Or it might have factored into what she would have done prior to waiting in the hall. And this is also an officer on the crisis intervention team. She's specially trained to deal with people that are in mental health crises. You can't lose sight of all those facts and that's why the district court said based on the totality here, I find it's for the jury to decide whether or not there was an immediate threat to somebody else. And insofar as that's a factual question, there's no jurisdiction. If the court does accept jurisdiction, I think it must affirm that decision. Do you have any further questions? Thank you very much. Thank you. How was the token break? I'm sorry? How was the Tobin Bridge? Did you hear about that? My car overheated on the Tobin Bridge three miles from here and I apologize that I got in a little bit late. I got a state police escort which was very nice. I'm sure you didn't tell them why you were here. The police might not have given you such a run. I do have some record citations at the appendix page 35 it's our statement of material facts we said at paragraph 35 physician's assistant Russell Kimball was approximately five feet from plaintiff when plaintiff pulled out the knife and the plaintiff The appendix page 35 it's our statement of material facts in the summary judgment at paragraph 35 physician's assistant Russell Kimball was approximately five feet from plaintiff when plaintiff pulled out the knife and the plaintiff admitted that But that wasn't the question the question was where was Kimball when she fired? I think the whole statement is that Kimball was five feet from the plaintiff when plaintiff pulled out the knife and pointed it in his direction both before and after he slashed himself with it the plaintiff objected to the knife being pointed at him but otherwise admitted that and the following page appendix 36 our paragraph 36 Mr. Kimball was close enough for plaintiff to reach with just a few steps and did not know what plaintiff was going to do next and the plaintiff admitted to that fact so we have the fact in the summary judgment record is that Kimball was five feet both before and after he pulled the knife and slashed himself and that was close enough for plaintiff to reach him in a few steps I just don't understand something did you argue in your summary judgment papers to the district court this point about how many feet away the person was? I don't know if we we had the record the district court seemed to take your argument to be that as long as the people were in the room you win because that's what it wrote in its opinion but we argued that these people were in close proximity and could have been reached and that's why it was reasonable for the officer to pursue the threat back to this phrase what does close proximity mean now you're saying that you could make an argument that there is no basis for reaching any conclusion other than that there was a person five feet away did you make that argument to the district court? we argued that the people who were in the room with him we had the record that it was five feet because that was part of the fact did you argue that no jury could find otherwise? yes our argument was that that no jury could find other than that person was five feet you wrote that to the district court that no jury could find that it was unreasonable for the officer to pursue the threat you're now trying to get us to decide on interlocutory appeal that you win because the person was only five feet away right? well I'm saying that the distance the people who were in the room in close proximity with him that a jury should not be able to decide that what a reasonable officer would think about the threat in the four seconds she had that the words close proximity do not help you at all every time you use them you lose because we don't know whether it means five feet or fifteen feet and those ten feet make a huge difference here so that's why we've been pressing all day to find something that wasn't in the brief and apparently wasn't argued below that now you point us to which is he was a few steps away at the time of the shooting and so I think Judge Barron's question is did you ever tell the district court that it needed to find his undisputed fact that he was just a I think your words were few steps away so that it could compare that to her testimony that there was no one between her and Begin and they were beside her or to the side again what I can say is I put it in our statement of material facts and it was admitted to by the plaintiff so that was the fact that he was five feet before and after and the fact that he was a few steps from Begin was in the record for the court so what do we then do let's assume that the fact is in the record that he was two feet away but the district court judge in its opinion simply said they were in the room do we have jurisdiction to say that the district court judge in its summary judgment ruling overlooked the significance of the piece of evidence in the record well answer that follow up I think that the decision in Roy says that that the jury doesn't get to second guess the officer in a closed case so I think that we're entitled to a de novo review and that's the facts that were before the judge well you don't get de novo review of the rule 56 decision whether that was in compliance with rule 56 we don't have jurisdiction to do that you get de novo review of whether given the facts found by the judge on the rule 56 motion it was clearly established I think the facts and I hate to use the phrase close proximity again but I believe that was what the court found based on the record that we put before it that the people were in close proximity when he pulled the knife I think what you since you're on interlocutory appeal you can bring it down the line the question is can you bring this issue right now and I'm we don't have a district court an indication from the district court that it agrees with your account of the record because all we have is the district court saying the issue is whether given that they're in the room it doesn't say anything more than that so I'm just trying to understand what is your argument to us on interlocutory appeal about what we're supposed to do is your complaint that the district court should be understood in saying that to have accepted your version of the record well I'd like to think so that was an undisputed fact before the court and it was in a small room and these are the distances we laid out in the record that the court had and the court described it as being whether they were in the room it's probably not it's obviously not as specific as we laid it out in the fact before the court what should we construe a few steps to need so well two steps of a large man I mean a few steps two or three steps I can't at least three close enough this morning I heard 20 feet the officer when the officer was summoned into the room and he said he wasn't going and they said you have to go and they summoned the officer she steps in and there's photographs in the record but there's an entrance way that's maybe 10 feet into this small room and the three men and the plaintiff are in that small room the officer steps into the entrance way where it says there were other members of the ACT team were in that hallway so when she steps in there are other people around her Kimball who's in the now she's looking into the small room Kimball steps out of the way as he pulls a knife so there's no one between her and him she estimated 15 to 20 feet I forget in your brief do you spell all this out to us I believe so I read it but I can't tell you I've read a lot of stuff but I believe that's in our brief and you argue that the district court erred in not finding all these facts in its opinion on summary judgment or do you argue that the district court silently accepted all these facts and ruled for summary judgment notwithstanding them all being true well ruling that on the facts that the district court found that it should still not be a jury issue as to whether or not there was a threat and the use of force was reasonable based on what the district court found and that's I'm citing Roy and Darabee V Conley for that proposition thank you thank you your honor